FILED

2010 SEP 27 PM 12: 5

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGDA GONZALEZ, et al.,<br><br>                         Plaintiffs,<br>vs.<br><br>COMPASS VISION, INC., et al.,<br><br>                         Defendants. | CASE NOS. 07cv1951 BEN (AJB)<br>                08cv1684 BEN (AJB)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Dkt. Nos. 103, 139, 170, 172, 176, 178, 189, 223, 244 in 07cv1951]<br><br>[Dkt. Nos. 64, 107, 134, 136, 162 in 08cv1684] |
| COMPASS VISION, INC.<br>      Third-Party Plaintiff/Counterdefendant,<br>vs.<br>MAXIMUS, INC.<br>      Third-Party Defendant/Counterclaimant. | |
| DEBORAH JEAN SMITH AND JENNIFER JEAN MCKEE,<br>                         Plaintiffs<br>vs.<br><br>COMPASS VISION, INC. et al. | |
| COMPASS VISION, INC.<br>      Third-Party Plaintiff/Counterdefendant,<br>vs.<br>MAXIMUS, INC.<br>      Third-Party Defendant/Counterclaimant. | |

## INTRODUCTION

Defendants Compass Vision, Inc. and National Medical Services, Inc. have separately moved for summary judgment in two related cases, *Gonzalez v. Compass Vision*, 07cv1951 and *Smith v. Compass Vision*, 08cv1684.[1] (Dkt. Nos. 103, 170, 172, 176, 178, 189 in 07cv1951; Dkt. Nos. 64, 134, 136 in 08cv1684.) Plaintiffs brought these actions against Compass and NMS for negligence. NMS' seven individual motions against each Plaintiff in the two cases and Compass' individual motions in each case overlap significantly. Accordingly, the Court considers the nine motions collectively. For the reasons set forth below, Defendants' motions for summary judgment are **DENIED**.

## BACKGROUND

The following background is drawn from the record before the Court; however, as discussed below, there are many genuine issues of material fact in dispute. Plaintiffs Magda Gonzalez, Karen Harston, Shawna Madison, Amy Shank, Shanda Turnidge, Bairbre Walsh, Deborah Jean Smith, Jennifer Jean McKee, and Eva Quisenberry are healthcare professionals with some admitted history of substance abuse.[2] To avoid the potential loss of their respective licenses, Plaintiffs agreed to participate in diversion programs which allowed them to keep working if they did not relapse. As part of the program, Plaintiffs stipulated to abstaining from the use of drugs and alcohol. Plaintiffs' respective Boards contracted with Third-Party Defendant Maximus to administer the diversion programs. Maximus retained Compass to administer the alcohol testing component and Compass retained NMS to conduct the testing.

NMS introduced Ethyl Glucuronide (EtG) commercially in 2003. The test analyzes the participant's urine to detect EtG, a metabolite of alcohol. NMS promoted and marketed EtG testing as the state-of-the-art test for the consumption of alcohol. NMS represented that the test could determine if a subject had consumed even one drink for up to two days and four to five drinks for up to five days after consumption. NMS established 250 ng/mL as the cut off for a positive test. These

---

[1] NMS' seven individual motions against each Plaintiff in the two cases and Compass' motions in each case overlap significantly. Accordingly, the Court considers the nine motions collectively.

[2] NMS did not move for summary judgment against all Plaintiffs, but Compass collectively moved for summary judgment as to all remaining Plaintiffs.

representations were made through new releases, unpublished articles portrayed as scientifically sound, presentations, and ongoing communications with customers like Compass.

Compass contacted NMS about the test and was integral in its selection as a test for alcohol consumption. Compass described the test as the gold standard in testing for alcohol consumption. Compass' President and Medical Review Officer ("MRO") drafted the protocols for the EtG testing used in Plaintiffs' diversion programs, including establishing 250 ng/mL as the cutoff for a positive test result. Under the protocols, a single positive test would result in suspension with removal from work until the participant had two negative test results. A single positive test, over 250 ng/mL, was sufficient to establish relapse and Compass maintained that any result over 500 ng/mL should not be considered the result of incidental use. Incidental use would include use of hand sanitizers, mouthwash, or non-alcoholic beer.

The reliability of the test was in doubt as early as 2005, when the scientific community began to question the use of the test and governmental advisories cautioned about reliance on the test to establish alcohol consumption. In response to these warnings and criticism, Defendants maintained that the established cut-offs were valid and resisted any attempt to raise the cut-off. Defendants co-authored a white paper, disseminated to customers, including Maximus, that defended the 250 ng/mL and reinforced their position that 500 ng/mL represented intentional use of alcohol. Defendants continued to rely on the test until early 2009.

Plaintiffs each tested positive from one to five times. Each denied any alcohol consumption. The source of incidental exposure was never determined for any of the Plaintiffs. Nothing other than Plaintiffs' positive test indicated relapse. All suffered some adverse consequences as a result of the positive tests, ranging from license revocation to years of probation.

## DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the

opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.*

A moving party can meet its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden of production, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable.'" *United Steelworkers of America v. Phelps Dodge, Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (quoting *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987)).

## I. Negligence

Defendants argue that Plaintiffs cannot succeed on their negligence claims because Plaintiffs cannot establish three of the elements for negligence: duty; breach; and causation. The elements of negligence are duty, breach of the duty, proximate cause, and damages. *McGarry v. Sax*, 158 Cal. App. 4th 983, 995 (3rd Dist. 2008). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Id.* "However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." *Id.*

Defendants' argument that neither owes a duty of care to Plaintiffs is foreclosed by this Court's prior rulings on this issue, specifically this Court's July 23, 2008 order in this case. The Court found that "[t]esting facilities owe a duty of care to individuals . . . [that] extends equally to laboratory-testing facilities and third party administrators." *Gonzalez v. Compass*, 07cv1951, at *5 (S.D. Cal. 2008). That duty extends to "[t]hird-party administrators and laboratory testing facilities endorsing and

performing EtG tests [because each] can reasonably foresee the injuries that may result from arbitrary cut-off limits." *Id.* Further, "[w]here laboratory facilities and third party administrators are involved in developing, marketing, promoting, or conducting testing of individuals, they have a duty to these individuals to exercise due care." *Id.* at *6. This conclusion is consistent with other district courts that have addressed the issue. *Fujisawa v. Compass Vision, Inc.*, --- F. Supp. 2d ---, 2001 WL 3292933, at *6 (N.D. Cal. 2010) ("This Court as well as several others have found that defendants National and Compass owed plaintiff a duty of care."); *Garlick v. Quest Diagnostics*, No. 06cv6244, 2009 WL 5033949, at *3-5 (D. N.J. 2009). Defendants owed Plaintiffs a duty of care.

As to breach and causation, there are genuine issues of material fact that preclude summary judgment. Plaintiffs have produced evidence that: Defendants promoted and utilized a test that was unreliable for the purpose promoted — determining if Plaintiffs consumed alcohol; Defendants were integral not only in setting an arbitrary cut-off limit and related protocols, but also in maintaining that limit in the face of significant criticism of the reliability of the test as a determinant of alcohol consumption; Defendants interpreted EtG results through "positive" reporting and use of an MRO to evaluate the meaning of the test results; and each Plaintiff suffered adverse consequences, in part, from this conduct. This evidence creates genuine issues of material fact as to breach and causation.

Defendants' argument that Plaintiffs cannot establish causation because the EtG test results were not the sole basis for the adverse consequences does not compel a different result. Plaintiffs are not required to prove that Defendants' conduct was the *sole* basis for the adverse consequences, rather Defendants' conduct need only be "a substantial factor in bringing about the Plaintiffs' harm." *Leslie G. v. Perry & Assocs.*, 43 Cal. App. 4th 472, 481 (2nd Dist. 1996). In addition to Plaintiffs' evidence that the tests were significant, Plaintiffs have produced evidence that the test results may have been the sole basis for the adverse consequences Plaintiffs were subjected to.

## II.   Litigation Privilege

Defendants argue that Plaintiffs' negligence claims cannot succeed because their communications with the Boards were absolutely privileged under California Civil Code § 47(b). Plaintiffs argue in opposition that the privilege does not extend to conduct or communications made outside the context of a pending or contemplated disciplinary action against Plaintiffs.

1  "Section 47 establishes a privilege that bars liability in tort for the making of certain statements." *Hagberg v. California Fed. Bank FSB*, 32 Cal. 4th 350, 360 (2004). Section 47(b) "bars a civil action for damages for communications made 'in any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to statutes governing writs of mandate.'" *Id.* (quoting § 47). Generally, "the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The statute is intended to encourage "'open channels of communication and the presentation of evidence' in judicial proceedings" by eliminating the threat of subsequent tort actions arising from the communication. *Id.* at 213.

The privilege applies "to all publications, irrespective of their maliciousness" and it extends to negligence, among other torts. *Action Apartment Ass'n. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241-42 (2007); *see also Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) ("Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution."). The language of the statute itself encompasses not just judicial or legislative proceedings, but any other official proceeding authorized by law. Cal. Civ. Code § 47(b)(3). The privilege has been applied in "all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative, and other official proceedings." *Hagberg*, 32 Cal. 4th at 361.

While the privilege is broad, it has limits. The privilege may extend to communications made outside the actual official proceeding, but the communications must have a reasonable relation to the actual proceeding for the privilege to apply. *See Pettitt v. Levy*, 28 Cal. App. 3d 484, 489 (5th Dist. 1972); *see also Olszewski v. Scripps Health*, 30 Cal. 4th 798, 830 (2003) (summarizing the extension of the privilege to recording a lis pendens, publication of an assessment lien, and the filing of a mechanic's lien in conjunction with a judicial proceeding to enforce it). And, the privilege only applies to "communicative acts and does not privilege tortious courses of conduct." *Olszewski*, 30 Cal. 4th at 830; *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 345 (4th Dist. 1997) (finding the filing

of a security interest based on tortious conduct, while communicative, did not privilege the tortious course of conduct leading up to its filing).

If Plaintiffs' claims were based solely on Defendants *reporting* inaccurate test results to the respective Boards for Plaintiffs' diversion programs, as Defendants characterize their role, the privilege might apply to that specific communication, assuming Plaintiffs' proceedings qualified as an official proceeding authorized by law. The Court in *Brown v. Lab One* was presented with such a case and found that a similar litigation privilege under Texas law precluded claims based on the labs reporting of test results. 2007 WL 6199913, at *7-8. But, as recently explained in a case similar to that presented here, Plaintiffs' "claims are premised on conduct that reaches several years prior to [Plaintiffs'] first positive test." *Fujisawa*, 2010 WL 3292933, at *4 n.6 (distinguishing *Brown*, 2007 WL 6199913).

Plaintiffs' claims are based on Defendants' conduct — promoting an unreliable and inaccurate test and setting an arbitrary cut-off limit. This conduct occurred before any proceedings had even commenced against Plaintiffs and were not related to any official proceeding against any Plaintiff. The privilege does not extend infinitely back in time to protect every tortious act that might someday result in a communication in an official proceeding. As another Court recently noted, "[s]uch a holding would yield results the Legislature could not have intended, given the purpose of § 47." *Fujisawa*, 2010 WL 3292933, at *4. Defendants' tortious conduct is not shielded by the litigation privilege.

## III. Eleventh Amendment Immunity

NMS claims it is immune from suit for negligence under the Eleventh Amendment to the U.S. Constitution, as an agent of the State. The Ninth Circuit has found "that private entities have no place within the state sovereign immunity legal framework." *Del Campo v. Kennedy*, 517 F.3d 1070, 1076 (9th Cir. 2008). This immunity has often even been declined to governmental entities. *Id.* at 1076-77. NMS argues it is an agent, but has not provided this Court with any authority that would support extending State immunity through two other private contractors or explained why this Court should ignore *Del Campo*'s finding that Eleventh Amendment immunity does not extend to private entities like NMS. *Id.* NMS is not entitled to summary judgment based on Eleventh Amendment Immunity.

///

### IV. First Amendment

Compass argues that the First Amendment to the U.S. Constitution immunizes it from liability for its statements about EtG testing. However, Compass cites no authority to support its proposition that the First Amendment immunizes its potentially negligent conduct. The Court will not create an immunity under the First Amendment "for negligently marketing and administering a faulty testing procedure that had serious repercussions." *Fujisawa*, 2010 WL 3292933, at *6.

### V. Exhaustion

NMS argues that Plaintiffs cannot pursue a negligence claim against it because Plaintiffs consented to participation in the diversionary program and did not pursue administrative remedies against the Boards. In short, NMS is arguing that Plaintiffs were required to pursue their negligence claims against two private entities for their negligent conduct outside the proceedings in an administrative proceeding against the state, even though neither private entity was a party to the administrative proceedings.

None of the cases cited by NMS support an exhaustion requirement against an administrative body before pursuing a negligence claim against a separate entity, not a party to the administrative proceeding. Each of the cases cited by NMS requires exhaustion against an administrative entity before pursuing litigation against *that administrative entity* if an administrative remedy is available. *Tiernan v. Trs. of Cal. State Univ.*, 33 Cal. 3d 211, 217-18 (1982) (finding exhaustion against California State University trustees was not required on claims for relief the administrative body was powerless to grant); *Top Hat Liquors v. Dep't of Alcoholic Beverage Control*, 13 Cal. 3d 107, 112 (1974) (licensee required to exhaust administrative remedies against Department of Alcoholic Beverage Control to reduce monetary penalties assessed by the Department of Alcoholic Beverage Control); *Bollengier v. Doctors Med. Ctr.*, 222 Cal. App. 3d 1115, 1116 (1990) (doctor required to exhaust administrative remedies against Doctors Medical Center for Center's suspension of his privileges before he was entitled to court review); *Envtl. Law Fund, Inc. v. City of Corte Madera*, 49 Cal. App. 3d 122, 113-14 (1st Dist. 1975) (exhaustion not required when plaintiff was not a party to the administrative proceedings). Additionally, as Plaintiffs have acknowledged, they are not seeking judicial intervention concerning any action by the Board, but rather are pursuing NMS and Compass

for their negligent conduct outside the diversionary program.

## MOTIONS TO SEAL

The parties' applications for leave to file certain documents under seal in support of or opposition to the motions for summary judgment in compliance with the requirements of the protective order are **GRANTED**. (Dkt. Nos. 139, 223, and 244 in 07cv1951; Dkt. Nos. 107 and 162 in 08cv1684)

## CONCLUSION

Defendants' motions for summary judgment are **DENIED** and the parties motions to seal are **GRANTED**.

**IT IS SO ORDERED.**

DATED: September 27, 2010

Hon. Roger T. Benitez
United States District Court Judge